# Evesson v. Ziegfeld, Appellant.

*Release—Seal—Receipt.*

The payment of a part of an obligation without release under seal will not have the effect of extinguishing the whole.

Where an actress playing under a contract signs a receipt not under seal for weekly salary, the receipt cannot be considered as a release of damages for breach of contract, where it appears that at the time the receipt was given the actress was under notice of dismissal, which was not, however, to take effect until after the date of the receipt.

*Master and servant—Other employment—Mitigation of damages.*

Where an actress contracts to play eight times per week and receives therefor $100 as salary, and she is wrongfully discharged, and thereafter secures employment in a situation where she has to play fourteen times per week at a salary of $175 per week, her first employer is only entitled to credit; in mitigation of damages, of the sum of $100 per week. In such a case where the plaintiff claims merely for unpaid salary for a certain number of weeks, she may show as evidence of performance on her part, but not as an element of damages, that she expended certain moneys for costumes, etc., which she was required to do under the contract.

*Practice, C. P.—Reserved point—Execution—Trial.*

Where it nowhere appears that at the trial, or subsequent thereto, in the certificate of exceptions, or in the bill of exceptions sealed, that objection was raised to the form of a reserved point, and it also appears that the case was tried upon the merits, the appellate court will not overthrow the judgment, because the trial judge said in reserving the point, " I will reserve," instead of using words of the present tense, or following the words he did use by further action.

Argued Oct. 19, 1902.   Appeal, No. 33, Oct. T., 1902, by defendant, from judgment of C. P. No. 1, Phila. Co., March T., 1903, No. 831, on verdict for plaintiff in case of Isabella Evesson v. Florence Ziegfeld.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.

Assumpsit for breach of contract of employment.   Before BRÉGY, J.

The facts appear by the opinion of the Superior Court.

At the trial the court admitted under exception and objection, evidence of expenditures that plaintiff had made in preparation for her performing her engagement with the defendant. [5, 6]

The plaintiff presented this point:

If you should find that the plaintiff received $175 per week while performing in Chicago and St. Louis, because she did $75.00 worth more of work in each week while engaged there than she was required to do while in the employ of the defendant, then such excess of $75.00 per week over what she would have earned if she would have remained in the defendant's employ cannot mitigate or reduce the damage which you may award the plaintiff, if you should find in her favor. *Answer :* Affirmed. [3]

The court charged in part as follows :

[It is claimed and argued to you that this receipt for $100, signed by her, on November 4, bars her right to recover. I have told counsel that I would decline to give you such binding instructions, and I do, and I say to you that that point I will reserve for the decision of the court in banc, as to whether that receipt debars her of her right to recover at all, leaving you to decide, if it does not, how much she is entitled to recover.] [8]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (3, 8) above instructions, quoting them ; (5, 6) ruling on evidence, quoting the bill of exception ; (9) in entering judgment on the verdict.

*Arthur S. Arnold* and *A. S. L. Shields*, for appellant.

*J. Martin Rommel*, for appellee.

OPINION BY WILLIAM W. PORTER, J., January 20, 1903 :

The plaintiff is an actress. The defendant is a theatrical manager. The action is for damages for breach of contract. In September, 1899, the parties entered into an agreement by the terms of which the plaintiff was to perform a certain part in a play then about to be presented by the defendant. She alleges that the agreement was verbal; that her engagement was for four weeks on the road and thereafter six months in New York city at a compensation of $100 per week, and that the defendant wrongfully discharged her within a few weeks

after engaging her.    The defendant says that when he engaged the plaintiff her services were bound by a written contract with another manager, one Brady; that Brady and the defendant had some interests in common; that Brady agreed to transfer his contract with the plaintiff to the defendant; that the plaintiff agreed to this; that under this contract the defendant was given the right to dismiss the plaintiff at any time on two weeks' notice; that he exercised the right, and that the plaintiff has no cause of complaint.

The fundamental issue between the parties was as to the terms of their contract and was one of fact.    It was submitted to the jury.    They have determined it favorably to the plaintiff.

On October 24, 1899, before the company reached New York, the defendant sent two notices to the plaintiff.    One was delivered on the evening of its date.    The other upon the day following.    In the first he says: "It is with regret that I am compelled to terminate your engagement at the end of two weeks," etc.    The second runs thus: "I regret that it becomes necessary to give you the usual two weeks' notice as per my letter of yesterday."    On November 4, 1899 (less than two weeks after the service of the notices) the plaintiff received her weekly salary then due, and signed a paper in form following: "We, the undersigned, hereby acknowledge the receipt of all salary in full to-date from Wm. A. Brady and F. Ziegfeld, Jr., the same being in full of all demands of every name and nature."    The name Ziegfeld was in writing.    The balance of the paper was in print.    Later, on the same day, the plaintiff received $5.00 for railroad fare back to New York. (This carfare, according to the defendant's own construction of his contract, he was bound to pay, whether the plaintiff was dismissed or went with the company to New York.)    The plaintiff tendered her services during the week following.    They were refused.    She sought employment elsewhere and found it for all but thirteen weeks of the unexpired term of her agreement with the defendant.    Part of the time, by appearing fourteen times a week, she earned $175, whereas under her contract with the defendant she was to appear but eight times per week and to receive $100 per week.

Four questions are raised on this appeal.

1. First, did the receipt given by the plaintiff operate as a

VOL. XXII—6

release and bar her present action? The paper was a printed form, headed "Salary Sheet," and evidently, from its phraseology, intended to be signed periodically by all, or several, of the members of the company. No sum of money is recited as paid or received. It was manifestly a receipt and, while containing expressions of release, was without seal. The amount paid to the plaintiff when the paper was signed was the weekly salary of $100, which was undeniably then due and payable. The setting up of this paper by the defendant as a release involves the suggestion that when it was taken there was more to be relieved from than the mere weekly salary paid. If he then was procuring a release of damages for a breach, such a release would seem to require a seal or other consideration to support it, since it has long been held that the payment of a part of an obligation without release under seal, will not have the effect of extinguishing the whole : Hartman v. Danner, 74 Pa. 36 ; Mechanic's Bank v. Huston, 11 W. N. C. 389; Girard Fire, etc., Ins. Co. v. Canan, 195 Pa. 589. But there is something beyond this. The breach by the defendant had not, when the $100 were paid, gone further than notice. The consummation of the breach had not then been reached. The plaintiff was still playing under her contract. The dismissal did not go into effect until two weeks from the date of the notice. The paper was not conclusive as a release of damages for a breach which had not been consummated when the receipt was given. The defendant might, within the two weeks, have recalled the notice by the permission of the plaintiff. The notice, not acted upon by the plaintiff, was simply a declaration of intention until it culminated in an actual breach by the refusal to permit the plaintiff to play. See Zuck v. McClure, 98 Pa. 541.

The discussion of this branch of the case need go no further, since the defendant complains that the court below erred in not directing a verdict for the defendant on the receipt itself. Enough has been said to show that the receipt could not have been given the effect of a complete bar.

2. The second question raised by this appeal is as to the measure of damages. For seven weeks of the period covered by her contract with the defendant, the plaintiff accepted employment in St. Louis and Chicago, for which she received $175 per week. This was $75.00 per week more than she would have

received from the defendant. In order to obtain the engagement at $175 she was compelled to participate in fourteen performances per week. Under the contract with the defendant she would have been required to participate in but seven. or eight. The defendant contends that the total cash earned by the plaintiff must be credited in mitigation of damages. The court below affirmed the plaintiff's seventh point, which was, " If you should find. that .the plaintiff received $175 per week while performing in Chicago and St. Louis because she did $75.00 worth more of work in each week while engaged there than she was required to do while in the employ of the defendant, then such excess of $75.00 per week over what she would have earned if she would have remained in the defendant's employ cannot mitigate or reduce the damage which you may award the plaintiff if you should find in her favor." It was of course the duty of the plaintiff after her discharge to use reasonable diligence to secure other employment. The defendant agreed that after the first four weeks the plaintiff should play in New York. She was not bound to accept employment, which involved going to Chicago and St. Louis and the undergoing of double the amount of labor, and the expenditure of twice the amount of time per week. See Emery v. Steckel, 126 Pa. 171. By the defendant's testimony it appears that the plaintiff's duty would have been to play seven or eight times per week in New York. The rate of payment, if calculated by performance, would be about $12.50 for each of eight performances in New York. Fourteen performances per week at the same rate would make $175, which was what she received in Chicago and St. Louis. This additional work could not have been compelled by the defendant under his contract. The time expended in earning the extra amount would have been the plaintiff's own, even under the contract of the defendant. It may be assumed that when she accepted this western proposition she was unable to obtain a New York offer with proper compensation. She could scarcely be held legally bound to accept an engagement so far from the place contemplated in her contract with the defendant and involving labors double those required by that contract. Had she declined, the defendant would have suffered damages to the extent of $100 per week. Her acceptance of the western engagement therefore diminished defendant's loss to the extent

of $700. Equitably he has received full benefit from her conduct by being credited with the $100 per week.

3. The third error alleged is the admission by the court of evidence showing expenditures incurred by the plaintiff in the purchase of costumes, etc., in preparation for the work to be done under her contract. It is to be observed that the statement of claim contains no item of damage based on these expenditures; that the verdict recorded is for the thirteen weeks during which the plaintiff was not employed, and that the court in the general charge instructed the jury that the plaintiff's claim was for the salary for the thirteen weeks during which she was unemployed. The evidence, therefore, was not admitted for the purpose of introducing the amount of the preliminary expenditure as an element of damage. The testimony of the plaintiff was that in playing the part assigned to her, she was required to pay for her own costumes and to dress the part handsomely. The issues trying, involved the right of the defendant to dismiss the plaintiff. It involved the showing of performance by the plaintiff of her obligations both preparatory to and in performance of her work. In this connection, therefore, the evidence that she had in good faith expended moneys to fulfil what she believed to be her obligation under her contract, was admissible.

4. The fourth question raised by the appellant is as to the form of reservation of a point of law. In the body of his charge the trial judge said to the jury: "It is claimed and argued to you that this receipt for $100 signed by her on November 4, bars her right to recover. I have told counsel that I would decline to give you such binding instructions, and I do, and I say to you that that point I will reserve for the decision of the court in banc as to whether that receipt debars her of her right to recover at all, leaving you to decide, if it does not, how much she is entitled to recover." The defendant argues that the use by the trial judge of the words "I will reserve" indicates only an intention to reserve, and that he subsequently failed to reserve the point. This contention is scarcely worthy of notice. The word "will" is not always indicative of intended future action. Where the power to do is manifestly present the word "will" is indicative of present action. Thus "I will reserve" the point, taken with the context, is palpably the doing of the thing, not the indication of the intent subsequently to do.

The record of this case shows from the stenographer's report that a general exception to the charge was taken by the defendant, and an exception to the affirmance of the plaintiff's points and the refusal of the defendant's point. This appears by the certificates of the stenographer and of the trial judge. Not satisfied with this record, the defendant procured the sealing of a further bill of exceptions. By this sealed bill it appears that the exceptions are, (1) to the charge of the judge; (2) to the affirmance of the plaintiff's first and seventh points; (3) to the refusal of the judge to charge as prayed in the defendant's point; (4) the overruling of objection to testimony respecting the purchase of costumes. Nowhere does it appear that at the trial; subsequent to trial; in the certification of exceptions; or in the bill of exceptions sealed, is objection directly raised to the form of the reserved point. In the absence of such objection in the court below, we are not impelled to overthrow the judgment in this case. See Velas v. Patton Coal Co., 197 Pa. 380; Boyle v. Boro. of Mahanoy City, 187 Pa. 1. It has been tried on his merits. If we reverse on the point now under discussion it would be with instruction that the case should be submitted to the jury and not determined by verdict directed for the defendant. This was the course taken in the trial under review. No good purpose will be subserved by subjecting the parties to further litigation.

The judgment is affirmed.